# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**THEODORE R. LUCAS,**

    **Plaintiff,**

    **v.**

**ROD PAIGE,**
**in his official capacity as Secretary,**
    **U.S. DEPARTMENT OF EDUCATION**

    **Defendant.**

**Civil Action No.  01-2393 (JMF)**

## MEMORANDUM OPINION

I herein resolve <u>Defendant's Motion for Summary Judgment</u> ("Def's Mot.").  For the reasons set forth below, defendant's motion will be denied.

## BACKGROUND

Plaintiff, Theodore R. Lucas ("Lucas"), currently works for the United States Department of Education ("DOE").  On November 16, 2001, plaintiff brought suit against the DOE, alleging that he was discriminated against in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, when he was not selected for the GS-13 position of Management & Program Analyst in the DOE's Office of Civil Rights.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.    In March of 1998, the DOE posted Vacancy Announcement No. 98-087VB for the GS-343-13 position of Management & Program Analyst for the Office of Civil Rights. Def's Mot. Ex. 3 at 1.  The announcement's opening date was listed as March 23, 1998 and its

closing date was listed as April 3, 1998. Id.

2.      Applicants for the vacancy were required to submit either a resume, Optional Application for Federal Employment (OF-612), Standard Form SF-171, or another application format of the applicant's choice. Id.  In their applications, applicants were required to address their previous work experience and educational accomplishments. Id.  Applicants were further required to have at least 52 weeks of specialized experience at the GS-12 level. Id.  The announcement did not indicate that a specific degree, whether undergraduate or graduate, was required. Id.

3.      The announcement listed five evaluation criteria, also known as KSA's or knowledge, skills, and abilities, and provided their respective numerical weights (with ten being the highest total score that any individual candidate could receive). Id. at 2.  The first KSA, "Knowledge of Federal, Departmental, and OCR policies and procedures," was given a weight of 2.0. Id.  The second KSA, "Knowledge of the principles of management analysis and the ability to apply them to a variety of program support projects," was given a weight of 2.0. Id.  The third KSA, "Knowledge of OCR systems," was given a weight of 2.0. Id.  The fourth KSA, "Ability to function as a group leader, work well with a variety of individuals and resolve issues," was given a weight of 1.5. Id.  The fifth and final KSA, "Ability to communicate effectively both orally and in writing," was given a weight of 2.5. Id.

4.      At the time of the selection, plaintiff was serving as a GS-343-12 in the Office of Civil Rights, Def's Mot. Ex. 16 at 1, and was sixty-two (62) years old. Def's Mot. at 8.

5.      At the time of the selection, Jerelyn Berry ("Berry"), the individual who was selected for

the position, was serving as a GS-343-12 in the Office of Civil Rights, Def's Mot. Ex. 16 at 1, and was forty-three (43) years old. Def's Mot. at 4.

6.    The selecting official was Dr. Paul Fairley ("Fairley"). Id. at 1.  At the time of the selection, he was serving as the Executive Officer & Director of the Resource Management Group and was fifty-nine (59) years old. Id.  At the time of the selection, he was the second level supervisor for the position and Eleanor Baker ("Baker") was the customer services unit's acting head and the immediate supervisor for the position. Def's Mot. Ex. 6 at 18.

7.    After receiving all of the applications for the GS-343-13 Management & Program Analyst position, Verna Braxton ("Braxton") of the DOE personnel office rated and ranked the candidates. Def's Mot. Ex. 19.  According to Braxton, Berry was the most qualified individual for the position. Id.

8.    On May 1, 1998, following Braxton's review of the applications, a Certificate of Eligibles was developed and subsequently issued to Fairley. Def's Mot. Ex. 7 at 1.  Four individuals were listed on the Certificate of Eligibles: Berry, Lucas, Lucinda Powell ("Powell"), and a fourth individual whose name appears to have been redacted.[1] Id.

9.    Pursuant to the terms of the written selection process negotiated between the DOE and its employee union, Fairley selected a panel of OCR employees to interview each of the applicants that were listed on the Certificate of Eligibles. Def's Mot. at 4.

10.    The panel members were as follows: 1) David Berkowitz ("Berkowitz"), GS-14 Program

---

[1] The recommendation memorandum from the GS-342-13 Management Analyst Promotion Panel lists this individual as Sandra Ward-Wooten. Def's Mot. Ex. 14.

Analyst at OCR and thirty-eight (38) years old at the time of the selection, 2) Jan Gray ("Gray"), GS-14 Attorney at OCR and thirty-seven (37) years old at the time of the selection, 3) Janice Pottker ("Pottker"), GS-13 Program Analyst at OCR and forty-nine (49) years old at the time of the selection, and 4) Gloria Threadgill ("Threadgill"), GS-13 Program Analyst at OCR and forty-nine (49) years old at the time of the selection. Def's Mot. at Exs. 9-12.

11.     Fairley, along with Nick Dorka, reviewed the KSA's and modified the weight given each. Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Def's Reply") Ex. 3; Def's Mot. Ex. 19.

12.     Each of the panelists interviewed each candidate and each candidate was asked the same interview questions. Def's Mot. at 2.

13.     At the conclusion of Berry's interview, Fairley told her she was the panel's first choice. Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl's Opp'n") Ex. 13 at 77.

14.     On July 15, 1998, the panel sent Fairley a memorandum in which they unanimously recommended Berry for the position. Def's Mot. Ex. 14.  Each panelist initialed his or her name on the memorandum. Id.

15.     On July 23, 1998, after personally interviewing each of the candidates, Fairley certified his selection of Berry. Def's Mot. Ex. 16.

16.     On July 22, 1998, plaintiff contacted DOE's EEO office regarding his non-selection. Complaint at 7.

17.     On November 16, 2001, plaintiff filed the current lawsuit.

**DISCUSSION**

I.    Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgement is

appropriate if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  There

exits a genuine issue of material fact "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Id. (citations omitted).  To prevail on the motion for summary

judgment, defendant must establish that on the basis of the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits," no reasonable finder of fact

could render a verdict in plaintiff's favor. Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).

In deciding whether defendant has met the burden, the court must view the evidence[2] most

favorably to the non-moving party. Id. at 255.

Pursuant to the ADEA, an employer may not "fail or refuse to hire or to discharge any

individual with respect to his compensation, terms, conditions, or privileges of employment,

---

[2] Unfortunately, plaintiff muddies the waters by drawing a distinction between the use of direct and circumstantial evidence in support of a claim of discrimination.  In fact, although that distinction originally created much confusion in the federal courts, it was mercifully put to death by the Supreme Court in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), wherein the Court indicated that a plaintiff was not required to produce "direct" evidence to obtain a mixed motive instruction.  The significance of Desert Palace for this case is its obliteration of any notion that "direct" evidence is somehow more probative than circumstantial evidence in a Title VII case; a plaintiff may rely on either. Id.  Accord Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 317 (4th Cir. 2005); Keelan v. Majesco Software, Inc., 407 F.3d 332, 340 (5th Cir. 2005); White v. Burlington Northern & Santa Fe R. Co., 364 F.3d 789, 811-12 (6th Cir. 2004); Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1015-16 (8th Cir. 2005); Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 30-31 (1st Cir. 2003); McGinest v. GTE Service Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).  For a thoughtful discussion of the confusion created by the distinction between the use of direct versus indirect evidence, see Costa v. Desert Palace, Inc., 299 F.3d 838 (9th Cir. 2002), aff'd, 539 U.S. 90 (2003).

because of such individual's age." 29 U.S.C. § 623(a)(1).  In failure to promote cases where age

discrimination is claimed, plaintiff may rely on expressions by the decision maker (denominated

"direct evidence"[3]) that are evidence of a discriminatory intent.  The existence of such evidence

in itself defeats the motion for summary judgment and takes the case to the jury. Trans World

Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) ("This argument fails, for the McDonnell

Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination.");

McGill v. Munoz, 203 F.3d 843, 845 (D.C. Cir. 2000) ("A plaintiff may always prove a claim of

discrimination by introducing direct evidence of discriminatory intent."); Ezell v. Potter, 400

F.3d 1041, 1044 (7th Cir. 2005) ("On his age claim, Ezell does not need the assistance of the

burden-shifting test for he produced direct evidence of his supervisor's discriminatory intent. . . .

Ezell has produced evidence that Wright and Pavlides [his supervisors] had a plan to eliminate

older workers because they believe that they were slower than younger workers.  Wright

frequently commented on Ezell's gray hair and slow speed.  He therefore may take that claim to

the jury.")  See also Carter v. George Washington Univ., 387 F.3d 872, 877 (D.C. Cir. 2004).

In the alternative, plaintiff can insist that even if his asserted "direct evidence" is

insufficient, he can still defeat the defendant's motion by resorting to the familiar burden shifting

paradigm of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in which plaintiff

establishes a prima facie case by showing that he is a member of a protected class, that he was

qualified for the position he sought but was rejected, and that the employer either filled the

position with another applicant or continued to try to fill it. Holcomb v. Powell, 433 F.3d 889,

---

[3] The use of the word "direct" in this context can be confusing.  It means only that
plaintiff need not resort to any burden-shifting paradigm.

895 (D.C. Cir. 2006).  See Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006);

Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004).  Once plaintiff meets

that burden, the defendant is obliged to produce evidence of a legitimate, non-discriminatory

reason for its actions.  McDonnell Douglas, 411 U.S. at 802.  Once the defendant does so, the

presumption "simply drops out of the picture." Burke v. Gould, 286 F.3d 513, 520 (D.C. Cir.

2002) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)).  The court of appeals

has then explained that with the presumption gone, plaintiff must show that a reasonable jury

could conclude from all the evidence that the failure to promote her was made for a

discriminatory reason.  Holcomb, 433 F.3d at 896-97 (quoting Lathram v. Snow, 336 F.3d 1085,

1088 (D.C. Cir. 2003)).  In this context, "all of the evidence" means "any combination of (1)

evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack

the employer's proffered explanation for its actions; and (3) any further evidence of

discrimination that may be available to the plaintiff, such as independent evidence of

discriminatory statements or attitudes on the part of the employer." Holcomb, 433 F.3d at 897

(citing Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc)).[4]

II.    Analysis

    A.    Fairley's Comment

        Plaintiff claims that when he entered the room to have his interview, Fairley "extended

courtesies to me and told me to have a seat." Pl's Opp'n Ex. 5 at 128.  Plaintiff claims that

Fairley then said, "You old timer, you've been around here. You know what this is all about." Id.

---

[4]Although initially developed as a framework for analyzing claims of discrimination
under Title VII, the McDonnell Douglas burden-shifting analysis also applies to claims brought
under the ADEA. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000).

According to plaintiff's theory of the case, the words "old timer" are a reference to his age and proof of discriminatory intent.

Defendant contends that Fairley does not recall using such an expression with plaintiff during his interview. Def's Mot. Ex. 26 at 4-5.  Defendant also suggests that even if Fairley did make such a statement, it was merely intended by him as an acknowledgment that plaintiff had worked for the DOE for a long period of time and thus was familiar with the interview process. Without more, defendant argues, this statement does not support an inference that age was the motivating factor behind the decision to hire Berry. Def's Mot. at 19.

A substantial body of case law dealing with statements made by employers and others and offered as proof of discriminatory intent has now emerged.  Of this case law, I have remarked the following:

> Mobil is correct to point out, with reference to these statements, that the federal courts have used the utmost care in analyzing statements made by corporate officials and employees which are alleged to suggest a discriminatory motive or intention. While, as Judge Posner has put it, a [sic] "a stray remarks" doctrine has blessedly not emerged, the federal courts have cautioned that a remark said in one context should not be torn from that context to prove "discrimination" that may exist only in the mind of an imaginative hearer who is attempting to make out a case for the unfairness of how he was treated. The cases are *sui generis* by their very nature but it can be said that the closer in time the statement is to the decision at issue, the more likely the federal courts will find it probative of a discriminatory intent. Influence is as important as time. Statements by the decision maker or those in a position to influence her are one thing; statements by colleagues who had nothing to do with the decision may be little more than office gossip around the water cooler. Finally, the statement must bespeak a discriminatory intention with little or no equivocation. Ambiguous statements cannot be stretched to mean whatever some one wants them to mean like so much "Silly Putty."

8

Hanan v. Corso, No. 95-CV-292, 1999 WL 320858, at *15 (D.D.C. May 18, 1999).

Judged by this standard, Fairley's alleged statement may be deemed proof of a discriminatory intent.  First, the statement was uttered by the decision maker during the hiring process, shortly before the decision was made.  Second, if, as it must be, the statement is construed in plaintiff's favor, it may be deemed an explicit reference to plaintiff's age, as opposed to, for example, the statements made in Hanan v. Corso, in which corporate officials spoke in general terms about the age of the work force.  While I certainly appreciate that Fairley's alleged statement is ambiguous, *i.e.*, subject to more than one interpretation, I certainly do not mean to suggest, by reference to my earlier opinion in Hanan v. Corso, that it is proper for a judge to both determine that a statement is ambiguous and then keep the jury from hearing it.  To the contrary, that a statement admits of more than one interpretation in itself suggests that there is a genuine issue of material fact as to its meaning.  See Coles v. Perry, 271 F. Supp. 2d 157, 162 (D.D.C. 2003).  Construing it as I must, in a light most favorable to plaintiff, the explicit reference to his age by the decision maker at the very moment of his interview for the position he sought easily meets the standard of sufficiency articulated in the cases involving references to the plaintiff's age, race or protected behavior.  E.g. Ezell v. Potter, 400 F.3d 1041, 1044 (7th Cir. 2005) (comments by plaintiff's supervisor about his gray hair and slow speed and evidence of plan to eliminate older workers sufficed; noting earlier case in which decision-maker's comment that old trees have to be cut down to permit young trees to grow sufficed); Machinchick v. PB Power, Inc., 398 F.3d 345, 353 (5th Cir. 2005) ("low motivation to adapt" sufficed; indirect references to age can support inference of age discrimination); Rachid v. Jack in the Box, Inc., 376 F.3d 305, 315-16 (5th Cir. 2004) (statement by plaintiff's supervisor that his

absence from a meeting was because he was probably in bed or sleeping because of his age sufficed); Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570-71 (6th Cir. 2003) (same; reference to plaintiff as grumpy old man or "pops" sufficed); Corti v. Storage Tech. Corp., 304 F.3d 336, 338-89 (4th Cir. 2002) (statement by colleague that he had never worked with women as equals before, that he was used to having women work for him and that plaintiff should go shopping because golf was a "guy thing" sufficed).  See also Treglia v. Town of Manlius, 313 F.3d 713, 721-22 (2d Cir. 2002) (statement, when told that plaintiff has filed discrimination charges, that "we can . . . play hard ball too" could be construed as evidence of retaliatory intent." Cf. Obrey v. Johnson, 400 F.3d 691, 697 (9th Cir. 2005) (disparaging remarks about group of which plaintiff is a member may be indicative of prejudice towards that group and plaintiff).

If the jury believes plaintiff's claim that Fairley made such a comment and that it was reflective of his intent to hire a younger individual for the position, then the jury might well conclude that defendant violated the ADEA.  If, on the other hand, the jury believes that Fairley never made such a remark or that if he did, it only reflected Fairley's acknowledgment that plaintiff had been with the agency for a long time, then the jury might well conclude that plaintiff has no case.  Since there is a genuine issue as to whether or not Fairley made such a statement and as to what he meant by it and since this fact is material to the outcome of the case, the question must be presented to the jury for final resolution.

In a failure to promote case, the plaintiff may attack the defendant's reason for selecting someone else by showing either that he was significantly more qualified for the position or that there are other reasons to disbelieve the employer's explanation for the decision it made. Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1295-96 (D.C. Cir. 1998) (en banc).

Defendant has produced evidence of a non-discriminatory reason for the decision–Berry was more qualified–and plaintiff now has to show either that he was significantly more qualified or that there is sufficient evidence to permit the jury to reject defendant's claim that Berry was more qualified and that the real reason Berry was chosen was age discrimination. Id.

In the analysis that follows I first reject the contention that plaintiff's qualifications were so superior to Berry's that the jury could find defendant's explanation pretextual on that basis alone. To the contrary, I conclude that plaintiff's qualifications, as evaluated by an independent personnel specialist, four interview panelists, the hiring official, and plaintiff's co-workers, were not so significantly better than Berry's that, under Aka, a jury may conclude from a comparison of the qualifications alone that the defendant's reason for selecting Berry is a pretext and that the motivating factor in her selection was age discrimination. I then conclude that there is sufficient other evidence to support the conclusion that the reason for Berry's selection is pretextual and thus defendant's motion must be denied.

B.      Plaintiff's Qualifications

1.      The Independent Personnel Specialist's Conclusions

Braxton, an independent personnel specialist, ranked Berry higher than plaintiff when considering each candidate's suitability for the position in light of the five KSA's. The difference between their final scores, however, was not great. To begin with, each candidate that met the position's minimum qualifications received an automatic 70 points. Def's Mot. Ex. 19. The remaining thirty points were then divided between the position's five KSA's. Id. Berry received an automatic 70 points plus 25.125 KSA points, for a total of 95.125. Id. Plaintiff also received

11

an automatic 70 points plus an additional 24 KSA points, for a total of 94 points. Id. at 2.  Thus, the difference between Berry's and plaintiff's scores was relatively small and probative of nothing since the difference between plaintiff's and Berry's scores was less than two points out of a possible one hundred points.

### 2.    The Interview Panelists' Conclusions

The interview panelists had to develop standard interview questions, review the KSA's and applications, and interview everyone on the Certificate of Eligibles.  The panelists were not, however, required to recommend anybody for the position if they felt that there were no qualified candidates among the interviewees. Def's Mot. Ex. 20 at 35.  Nevertheless, Berry was unanimously[5] selected by the four interview panelists as the most qualified individual for the job. Def's Mot. Ex. 14.

According to Berkowitz, Berry had the highest score with respect to the accuracy and responsiveness of her answers to the interview questions. Id. at 18.  Specifically, Berkowitz felt that Berry's answers were more detailed and illustrative of the quality Berry was trying to stress in the interview, namely, her leadership skills. Id. at 42-43.  In comparison, Berkowitz stated that he didn't like the fact that, when asked, plaintiff failed to identify any weaknesses. Id. at 27-28. Berkowitz also stated that even though there were differences between plaintiff's and Berry's educational backgrounds in that plaintiff had a law degree while Berry did not, Berkowitz's primary focus during the interview was on the candidates' relevant work experience. Id. at 33. Finally, Berkowitz noted that the panel wasn't required to select anyone, but they did. Id. at 35.

---

[5] Butler did not vote on the most qualified candidate but gave the other panelists her proxy.

According to Gray, after the interviews were completed, the panel unanimously agreed that Berry had done the best job. Def's Mot. Ex. 21 at 13.  Gray also noted that it was her impression that the interview answers were weighted more heavily than the applications. Id. at 20.  Finally, Gray indicated that she did not like plaintiff's answer in which he stated that he did not have any weaknesses. Id. at 24.

Pottker, too, recalled the panel's unanimous conclusion that Berry was the most qualified candidate for the position. Def's Mot. Ex. 22 at 13.  Pottker also noted that although the panel had discussed the fact that Berry only had a high school education, the panelists ultimately concluded that the interviewees' educational levels were not as important as their answers to the interview questions. Id. at 22.  Pottker also recalled the panel's dissatisfaction with plaintiff's statement that he did not have any weaknesses, although she further noted that plaintiff had added that if he became aware of any personal weaknesses, he would take steps to change them. Id. at 34-35.  Overall, Pottker concluded that Berry's answers to the questions were "excellent," while she was disappointed in plaintiff's performance and wished he had done a better job. Id. at 40.

Butler, the last of the four panelists, believed that the two most qualified candidates for the position were Powell and plaintiff. Def's Mot. Ex. 23 at 29.  However, she never voiced this opinion to the other panel members. Id. at 33.  Instead, Butler gave the panel her proxy to make the hiring decision. Id. at 29.

As stated above, while the panelists had to interview the candidates, they were under no obligation to make a recommendation.  That three of the four panelists ranked Berry as the most

qualified candidate defeats any contention that his qualifications were so obviously superior that Fairley's explanation for selecting Berry[6] was a pretext for age discrimination.

3.     Plaintiff's Assessment of His Own Qualifications

While plaintiff cannot establish the superiority of his qualifications vis à vis Berry, to the point of defeating the defendant's motion, I nevertheless find that there is sufficient evidence to permit a reasonable jury to conclude that the reasons given for the selections of Berry were pretextual.  I find that evidence in plaintiff's own testimony, in the testimony of two people who worked with both of them, and in Fairley's explicit reference to plaintiff's age.

Plaintiff himself will testify that he was in a position to see what duties Berry performed and what work she was assigned and that, in his opinion, the work was not as complicated and demanding as Berry and her supporters claimed it was.  He will, of course, also testify as to the work he performed and as to why he was more qualified in terms of experience and education.

As defendant correctly points out, however, plaintiff's own assessment of his qualifications vis à vis Berry does not, in itself, defeat defendant's motion for summary judgment. Def's Reply at 19 and cases cited therein.  Plaintiff can, of course, based on personal knowledge,[7] testify as to his own responsibilities and as to how he performed them.

---

[6] Fairley also concluded that Berry's performance was superior to that of plaintiff's. Def's Mot. at 14.  Specifically, Fairley noted that Berry "was on target with respect to the questions relating to programmatic knowledge and with respect to her common sense understanding of handling certain situations," whereas plaintiff "showed a lack of understanding and knowledge of the policies and law and rules and regulations." Id.  Fairley concluded that, due to the fact that the position at issue was within the Customer Service Unit, plaintiff's lack of understanding "could be embarrassing to the organization." Id. at 14-15.

[7] Fed. R. Evid. 701.

4.      Powell's and Butler's Conclusions

Powell, another candidate for the position at issue and someone who worked in OCR with both Berry and plaintiff, testified in her deposition that Berry was not the section's brightest star and that she did not know the fundamentals of her position, such as the difference between a complaint and a compliance review. Pl's Opp'n Ex. 8 at 31-32.  In addition, Butler, a member of the interviewing panel, testified that Powell and plaintiff could do the work of a GS-14/15 or an SES if they had to.  Butler further testified that although she thought Berry was a good employee, Berry lacked the educational background or experience to function in the job, while plaintiff already had experience handling major complex issues. Def's Mot. Ex. 23 at 46.

**CONCLUSION**

While plaintiff cannot establish that his qualifications were so superior to Berry's that the defendant's motion should be granted on that basis alone, he has, in my view, tendered sufficient evidence to create a genuine issue of material fact as to whether his age was a motivating factor in the decision to promote Berry.

First, there is his own testimony comparing his qualifications with Berry's.  Second, while Powell and Butler may have axes to grind with defendant,[8] they worked with both persons and insisted that plaintiff was more qualified than the person selected.  Third, in this Circuit, once the presumption of discrimination disappears because the defendant had proffered a non-discriminatory reason for its decision, plaintiff must show that a jury could conclude from all of

---

[8] As I read their testimony, they believe that they too have been victimized by unfair employment practices.

the evidence that the decision to select Berry and not plaintiff was made for a discriminatory

reason. Mastro v. Potomac Elec. Power Co., No. 05-CV-7044, 2006 WL 1359604, at *8 (D.C.

Cir. May 19, 2006). "All of the evidence" means any combination of 1) the evidence

establishing the plaintiff's prima facie case, 2) evidence the plaintiff presents to attack the

employer's explanation for its actions, and 3) any further evidence available to the plaintiff "such

as independent evidence of discriminatory statements or attitudes on the part of the employer."

Id. (citing Aka, 156 F.3d at 1289). Thus, Fairley's reference to plaintiff as an "old timer" re-

enters the picture and must be weighed in the calculus. When it has, we have a case in which

there is 1) a substantial discrepancy in age between the successful applicant and the plaintiff,[9] 2)

testimony by plaintiff that his qualifications were superior and that management's opinion of

Berry was neither objective nor fair, 3) supporting testimony by two colleagues who, having

worked with Berry and plaintiff, considered plaintiff superior to Berry in the knowledge, skills

and abilities the job demanded, and 4) a specific reference to the plaintiff's age by the person

who made the hiring decision. In my view, the evidence is sufficient to create a genuine issue of

material fact under the controlling precedents. Compare, e.g., Mastro, 2006 WL 1359604, at *6-

10 and Salazar v. WMATA, 401 F.3d 504, 509 (D.C. Cir. 2005) with Holcomb v. Powell, 433

F.3d 889, 896-901 (D.C. Cir. 2006).

      The defendant's motion for summary judgment will be denied. An order, that also sets a

date for a status conference, accompanies this Memorandum Opinion.

---

[9] See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996).

_____

JOHN M. FACCIOLA

Dated:                              UNITED STATES MAGISTRATE JUDGE